AO 93C (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means (USAO rev. 12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>21045 Vanowen Street, Apartment 211, Canoga Park, California 91303 | )<br>)<br>) Case No. 21-MJ-02063<br>)<br>)<br>)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Central District of California *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

*See Attachment B*

Such affidavit(s) or testimony are incorporated herein by reference and attached hereto.

**YOU ARE COMMANDED** to execute this warrant on or before <u>14 days from the date of its issuance</u> *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

You must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>the U.S. Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.</u>

Date and time issued:   April 27, 2021   13:40 p.m.   _____
                                                                     *Judge's signature*

City and state:   Los Angeles, CA        Honorable Michael R. Wilner
                                                                  *Printed name and title*

AUSA:   El-Amamy x0552

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| 21-MJ-02063 | 04/29/2021 6:00 AM | At residence of Patrick VanReenen |

Inventory made in the presence of : SA Merrilee Goodwin

Inventory of the property taken and name of any person(s) seized:

See attached

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 04-30-21

*Executing officer's signature*

SA, Merrilee Goodwin
*Printed name and title*
(Special Agent)

# EVIDENCE RECOVERY LOG
*PRINT LEGIBLY*

CONTINUATION PAGE
PAGE 1 OF 3

## GENERAL INFORMATION (COPY DATA FROM PAGE ONE)

| DATE | CASE ID | LOCATION | PREPARER/ASSISTANTS |
|---|---|---|---|
| 4/29/21 | 266N-LA-3408859 | 21045 Vanowen St., Apt 211, Canoga Park, CA | SA Cody Crutchley |

| ITEM # | DESCRIPTION | WHERE FOUND | RECOVERED BY / OBSERVED BY (Last name) | PACKAGING METHOD | COMMENTS (if needed) |
|---|---|---|---|---|---|
| 1 | Miscellaneous papers | Room D - on desk | Cody Crutchley / Kyle Hicks | | |
| 2 | Box of documents | Room D - on closet shelf | Kyle Hicks / Jeff Wolf | | |
| 3 | Sandisk USB drive, Black | Room D - in desk drawer | Cody Crutchley / Kyle Hicks | | |
| 4 | Cryptocurrency receipts | Room D - in desk drawer | Cody Crutchley / Kyle Hicks | | |
| 5 | WD MY Passport, SN: WXL2A11DA52U | Room D - in desk drawer | Cody Crutchley / Kyle Hicks | | |
| 6 | Kyle Cleveland documents | Room B - in blue bag | Ryan Abbott / Chad Warren | | |
| 7 | Red Samsung Galaxy SIII phone | Room D - in closet on shelf | Kyle Hicks / Jeff Wolf | | |
| 8 | "Trump Winery" USB drive | Room D - in closet on shelf | Kyle Hicks / Jeff Wolf | | |
| 9 | Blue box of documents | Room D - in closet on shelf | Kyle Hicks / Jeff Wolf | | |
| 10 | Ziploc bag with white crystal-like substance | Room D - in black box on closet shelf | Kyle Hicks / Jeff Wolf | | |
| 11 | Misc. documents | Room B - in blue bag | Ryan Abbott / Chad Warren | | |
| 12 | Misc. debit cards | Room B - in black trash bag | Ryan Abbott / Chad Warren | | |
| 13 | Plastic bag with white crystal-like substance | Room D - in black safe box | Kyle Hicks / Jeff Wolf | | |
| 14 | Black Lenovo laptop SN: R8-H8WB3C, Product ID: 480MNU | Room B - on shelf | Ryan Abbott / Chad Warren | | |
| 15 | Bag of documents | Room B - on floor | Ryan Abbott / Chad Warren | | |
| 16 | Bag of white substance | Room D - in black safe box | Kyle Hicks / Jeff Wolf | | |

# EVIDENCE RECOVERY LOG
*PRINT LEGIBLY*
CONTINUATION PAGE  
PAGE 2 OF 3

## GENERAL INFORMATION (COPY DATA FROM PAGE ONE)

| DATE | CASE ID | LOCATION | PREPARER/ASSISTANTS |
|---|---|---|---|
| 4/27/21 | 266N-LA-340859 | 21045 Vanowen St., Canoga Park, CA | SA Cody Crutchley |

| ITEM # | DESCRIPTION | WHERE FOUND | RECOVERED BY / OBSERVED BY (Last name) | PACKAGING METHOD | COMMENTS (if needed) |
|---|---|---|---|---|---|
| 17 | Misc. documents | Room D - in black safe box | Kyle Hicks / Jeff Wolf | | |
| 18 | Misc. documents | Room B - on floor | Ryan Abbott / Chad Warren | | |
| 19 | Misc. documents in yellow folder | Room B - on floor | Ryan Abbott / Chad Warren | | |
| 20 | Misc. documents | Room G - in dresser drawer | Rich Morton / Jeff Wolf | | |
| 21 | baggy w/ black tar-like substance | Room G - in dresser drawer | Rich Morton / Jeff Wolf | | |
| 22 | Misc. documents | Room F - in cabinet | Cody Crutchley / Evan Guevarra | | |
| 23 | Glock 19 | Room G - in green backpack | Rich Morton / Jeff Wolf | | |
| 24 | iPad Model A2316 w/ case w/ cable | Room G - in green backpack | Rich Morton / Jeff Wolf | | |
| 25 | Misc docs. | Room G - in black suitcase | Cody Crutchley / Kyle Hicks | | |
| 26 | fan bag w/ cards | Room G - in nightstand drawer | Ryan Abbott / Chad Warren | | |
| 27 | Misc. docs. | Room G - in nightstand drawer | Ryan Abbott / Chad Warren | | |
| 28 | Notebook | Room G - in nightstand drawer | Ryan Abbott / Chad Warren | | |
| 29 | Glock magazine w/ 15 rounds from item 23 of ammo | Room G - in item 23 | Rich Morton / Jeff Wolf | | |
| 30 | Joss. in manilla envelope | Room B - on top of black dresser in closet | Kyle Hicks / Jeff Wolf | | |
| 31 | baggy of mushrooms | Room G - on top of glass dash | Rich Morton / Evan Guevarra | | |
| 32 | iPhone Model A1660 black | Room G - on bed | Ryan Abbott / Chad Warren | | |

# EVIDENCE RECOVERY LOG
PRINT LEGIBLY

**GENERAL INFORMATION (COPY DATA FROM PAGE ONE)**

| DATE | CASE ID | LOCATION | PREPARER/ASSISTANTS |
|---|---|---|---|
| 4/29/21 | 266N-LA-3408159 | 21045 Vanowen St., Canoga Park, CA | SA Cody Crutchley |

| ITEM # | DESCRIPTION | WHERE FOUND | RECOVERED BY / OBSERVED BY (Last name) | PACKAGING METHOD | COMMENTS (if needed) |
|---|---|---|---|---|---|
| 33 | Not collected | | | | |
| 34 | Tactical Hun Gun | Room G - under mattress | Kyle Hicks / Cody Crutchley | | |
| 35 | small green bag w/ 3.5 white pills | Room G - on mattress | Kyle Hicks / Cody Crutchley | | |
| 36 | small bowl w/ red lid & poly like substance inside | Room G - on white plastic nightstand | Jeff Wolf / Cody Crutchley | | |
| 37 | san disk Ultra Plus 64 GB micro SD | Room G - in gopro on top of dresser | Jeff Wolf / Cody Crutchley | | |
| 38 | WD My Passport; SN: WXSIE48943 SRO | Room A - in white hutch | Evan Guevarra / Cody Crutchley | | |
| 39 | Misc. docs. | Room A - on top of microwave | Kyle Hicks / Evan Guevarra | | |
| 40 | white binder w/ documents | Room F - in lower cabinet | Grace Valenzuela / Evan Guevarra | | |
| 41 | blank check paper | Room F - in lower cabinet | Grace Valenzuela / Evan Guevarra | | |

**ATTACHMENT A-1**

<u>PREMISES TO BE SEARCHED</u>

The premise is located at 21045 Vanowen Street, Apartment 211, Canoga Park, California 91303. The SUBJECT PREMISES is a unit on the second floor of the apartment building. Each unit inside of the complex is assigned a unique number, and the SUBJECT PREMISES is apartment number 211. The front door faces east, and is white in color with the numbers 211 affixed to the front door. The exterior of the apartment complex is shown in the photographs below:



i

**ATTACHMENT B**

**X.   ITEMS TO BE SEIZED**

1.   The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 1962(d) (Racketeer Influenced and Corrupt Organization ("RICO") Conspiracy); 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm or Ammunition); 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Controlled Substances); 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances); and 18 U.S.C. § 1028 (Fraud and Related Activity in Connection with Identification Documents, Authentication Features, and Information) (the "Subject Offenses"), namely:

   a.   Any controlled substance, controlled substance analogue, or listed chemical;

   b.   Items and paraphernalia for the manufacturing, distributing, packaging, sale, or weighing of controlled substances, including scales and other weighing devices, plastic baggies, balloons, and packaging materials;

   c.   Firearms and ammunition;

   d.   United States currency over $1,000 or bearer instruments worth over $1,000 (including cashier's checks, traveler's checks, certificates of deposit, stock certificates, and bonds) (including the first $1,000), and data, records, documents, or information (including electronic mail, messages over applications and social media, and photographs) pertaining to, obtaining, possessing, using, applications for, or

transferring money over $1,000, such as bank account records, cryptocurrency records and accounts;

   e. Data, records, documents, or information (including electronic mail and messages) pertaining to obtaining, possessing, using, or transferring personal and/or financial transaction identification information for persons other than Patrick Van REENEN ("REENEN"), such as names, addresses, phone numbers, credit and debit card numbers, security codes, bank account and other financial institution account numbers, Social Security numbers, email addresses, IP addresses, as well as PIN numbers and passwords for financial institutions or internet service providers;

   f. Any altered, counterfeit, or fraudulent identifications, checks, access devices, monetary instruments, or other official documents;

   g. Any identifications, checks, access devices, monetary instruments, or other official documents that are not addressed to, or in the name of, REENEN;

   h. Any tools or equipment, such as computers, software, printers, scanners, embossing machines, credit card readers or encoders, washing chemicals, or imprinting tools, used or intended to be used to alter, counterfeit, or create fraudulent checks, access devices, or other monetary instruments;

   i. Documents and records reflecting the identity of, contact information for, communications with, or times, dates or locations of meetings with co-conspirators, sources of supply of

controlled substances or firearms, or drug or firearms customers, including calendars, address books, telephone or other contact lists, pay/owe records, distribution or customer lists, correspondence, receipts, records, and documents noting price, quantities, and/or times when drugs, guns, or ammunition, were bought, sold, or otherwise distributed, whether contained in hard copy correspondence, notes, emails, text messages, photographs, videos (including items stored on digital devices), or otherwise;

   j. Records, documents, programs, applications and materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from any of the digital devices and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls;

   k. Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device and which relate to the above-named violations;

   l. Audio recordings, pictures, video recordings, or still captured images related to the purchase, sale, transportation, or distribution of drugs, firearms, or ammunition;

      m.   Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations;

      n.   Any and all cryptocurrency, to include the following:

      i.   any and all representations of cryptocurrency public keys or addresses, whether in electronic or physical format;

      ii.  any and all representations of cryptocurrency private keys, whether in electronic or physical format;

      iii. any and all representations of cryptocurrency wallets or their constitutive parts, whether in electronic or physical format, to include "recovery seeds" or "root keys" which may be used to regenerate a wallet.

The United States is authorized to seize any and all cryptocurrency by transferring the full account balance in each wallet to a public cryptocurrency address controlled by the United States.

**WHERE APPROPRIATE**: The United States is further authorized to copy any wallet files and restore them onto computers controlled by the United States. By restoring the wallets on its own computers, the United States will continue to collect cryptocurrency transferred into the defendant's wallets as a

result of transactions that were not yet completed at the time that the defendant's devices were seized.

   o. Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the Subject Offenses, and forensic copies thereof.

   p. With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

    i. evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

    ii. evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    iii. evidence of the attachment of other devices;

    iv. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

    v. evidence of the times the device was used;

    vi. passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

     vii. applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

     viii. records of or information about Internet Protocol addresses used by the device;

     ix. records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

 2. As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

 3. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and

connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

II. **SEARCH PROCEDURE FOR DIGITAL DEVICES**

4. In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

a. Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) and/or forensic image(s) thereof to an appropriate law enforcement laboratory or similar facility to be searched at that location. The search team shall complete the search as soon as is practicable but not to exceed 120 days from the date of execution of the warrant. The government will not search the digital device(s) and/or forensic image(s) thereof beyond this 120-day period without obtaining an extension of time order from the Court.

b. The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

i. The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the list of items to be seized. The search team may also search for and

attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

        ii. The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

        iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

    c. The search team will not seize contraband or evidence relating to other crimes outside the scope of the items to be seized without first obtaining a further warrant to search for and seize such contraband or evidence.

    d. If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

    e. If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

    f. If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the list of other items to be seized, the government may retain the digital device and any forensic copies of the digital device, but may not access data falling outside the scope of the

other items to be seized (after the time for searching the device has expired) absent further court order.

       g.   The government may also retain a digital device if the government, prior to the end of the search period, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending), including in circumstances where the government has not been able to fully search a device because the device or files contained therein is/are encrypted.

       h.   After the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

5.   The review of the electronic data obtained pursuant to this warrant may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

6.   In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

       a.    Any digital device capable of being used to commit, further, or store evidence of the offense(s) listed above;

       b.    Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

       c.    Any magnetic, electronic, or optical storage device capable of storing digital data;

       d.    Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

       e.    Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

       f.    Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

       g.    Any passwords, password files, biometric keys, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

       7.    During the execution of this search warrant, law enforcement is permitted to: (1) depress REENEN's thumb and/or fingers onto the fingerprint sensor of the device (only when the device has such a sensor), and direct which specific finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of REENEN's face with his or her eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain

access to the contents of any such device.  In depressing a person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in Graham v. Connor, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

8.   The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order